IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ROCK HILL DIVISION

| | | |
|---|---|---|
| MARY JOE MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 0:09-2308-JFA-JRM |
| v. | ) | |
| | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| DAVID E. SIMPSON, Attorney at | ) | |
| Law, IVAN N. WALTERS, Attorney | ) | |
| at Law, S. JACKSON KIMBALL, III, | ) | |
| Attorney at Law and Master in | ) | |
| Equity for York County, LISA H. | ) | |
| WHISENANT, RONALD E. | ) | |
| WHISENANT, | ) | |
| | ) | |
| Defendant(s). | ) | |
| _____ | ) | |

*Pro se* Plaintiff, Mary Joe Moore ("Moore"), filed this case on September 1, 2009. An amended complaint was filed on October 2, 2009. Moore alleges a number of claims against the Defendants who were involved in a real estate transaction with her concerning property located in York County, South Carolina. Jurisdiction in this Court is based on diversity of citizenship, as Moore is a resident of Florida, and the Defendants are residents of South Carolina.

In the original transaction, Moore's mother, Mary G. Curtis ("Ms. Curtis"), was the grantor and Ronald E. Whisenant ("R. Whisenant") and Lisa H. Whisenant ("L. Whisenant") were the grantees. David E. Simpson, Esquire ("Simpson") is an attorney who was involved with the closing of the initial transaction. Ivan N. Walters, Esquire ("Walters") is an attorney who represented Moore after the initial closing. The Honorable S. Jackson Kimball, III ("Judge Kimball") is the Master-in-Equity for York County. He presided over a foreclosure action on a portion of the

1

property which Ms. Curtis conveyed to the Whisenants.

All the Defendants have answered. Simpson, R. Whisenant, and L. Whisenant are proceeding *pro se*. Judge Kimball filed a motion for summary judgment on December 10, 2010 (Doc. No. 52). Simpson filed a motion for summary judgment on December 13, 2010 (Doc.No. 59). Walters filed a motion for summary judgment on December 15, 2010 (Doc.No. 62). Orders pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) were entered by the Court following the filing of these motions for summary judgment explaining to Moore her responsibility to respond to the motions. Moore filed responses and a motion for summary judgment (Doc.No. 55). Additionally, on February 24, 2011, Moore filed a motion to dismiss Judge Kimball as a party Defendant (Doc.No. 75).

## FACTS

### A. The Original Transaction

Ms. Curtis owned real estate off Mt. Gallant Road in York County adjacent to property owned by her daughter, Moore. Apparently, Ms. Curtis wished to convey her property to Moore, who in turn, wished to sell a portion of the combined property to the Whisenants. The potential transaction was further complicated by a York County requirement that each parcel in a subdivision have ingress and egress on a county approved road. Because the parcel the Whisenants wished to purchase from the larger combined property would not qualify under the regulation, Ms. Curtis, Moore, and the Whisenants decided that Ms. Curtis would convey her property to the Whisenants, who would keep a portion of the property and convey the remainder of the property to Moore once a complying road or roads were built and York County approved the subdivision plat. The following steps were taken to accomplish this goal:

1.  A plat dated August 22, 1992, was prepared by a registered land surveyor showing the property of Ms. Curtis. Ms. Curtis' property was divided into contiguous tracts designated as "Tract 1", "Tract 2", and "Tract 3" on the plat. (Kimball Mem., Ex. A).

2.  On October 22, 1992, Ms. Curtis signed a document entitled "Instructions as regards portions of Real Property" which stated:

    > I hereby give my daughter, Mary Joe Moore, permission to combine a certain tract of property as defined in Attachment "A: with other property as owned by her or available to her for subdivision.
    >
    > I understand that there are certain road size requirements imposed by York County zoning laws which will require this entire tract to be temporarily deeded to the purchaser of what will be one parcel of several, and that after those zoning requirements are met the remainder of my tract will be deeded back from that purchaser.
    >
    > It is my understanding that attorney David Simpson of the firm of Kimball, Dove and Simpson will be the attorney handling the deed process for these transactions.
    >
    > Therefore, it is my instruction to Mr. Simpson that the remainder of this property be deeded in it's[sic] entirety to Mary Joe Moore and not be returned to me.
    >
    > As required I will sign the deed transferring this property to the initial purchaser.

    (Pl. Response to Simpson Mot. for Sum. Jud., Ex. 9)[1]

3.  By deed dated October 23, 1992, and witnessed by Simpson, Ms. Curtis conveyed Tracts 1, 2, and 3 of the Curtis plat to R. Whisenant and L. Whisenant. (Kimball, Mem., Ex. B).

4.  On October 27, 1992, Moore, R. Whisenant and L. Whisenant executed separate

---

[1] "Pl. Mem., Ex. __" refers to exhibits attached to Moore's memorandum in support of her motion for summary judgment.

3

"Options to Purchase" giving Moore the right to purchase Tracts 1 and 3 from R. Whisenant and L. Whisenant. Simpson served as a witness on each option. (Kimball Mem., Exs. C and D; Pl. Response to Simpson Mot. for Sum. Jud., Exs. 13 and 15).

### B. The Second Transaction (Tract 1)

1. By deed of March 11, 1993,[2] R. Whisenant and L. Whisenant conveyed Tract 1 to Moore and Moore's sister Charlotte Ann Smith ("Smith"). The deed was not witnessed by Simpson and was not recorded until November 18, 1998. (Kimball Mem., Ex. E and Pl. Response to Simpson Mot. for Sum. Jud., Ex. 16).

2. A revised plat of Tracts 1, 2 and 3 dated July 9, 1993 shows a new road into the property ("Brandler Trail"), which provided ingress and egress to Tracts 1 and 2, but not to Tract 3. The plat also shows that a residence had been built on Tract 2 by the Whisenants. (Kimball Mem., Ex. F and Pl. Response to Simpson Mot. for Sum. Jud., Ex. 10).

3. Moore has documented her attempts to obtain title to Tract 1 beginning in 1995. (*See* Pl. Mem., Exs. 20-A through 20-N). Correspondence between Moore and Simpson regarding the deed to Tract 1 shows confusion over the situation and that Moore and Smith (Moore's sister) filed a *pro se* lawsuit against Simpson in state court which was dismissed due to a defect in service. On February 4, 1998, Simpson wrote to Moore stating that "(t)he deed [to Tract 1] has not been recorded because the

---

[2]The date on the deed appears to be a typographical error since the execution date (March 11, 1992) is before Ms. Curtis conveyed the property to R. Whisenant and L. Whisenant. The deed shows that the witnesses appeared before the notary on March 11, 1993. Therefore, the undersigned concludes that the deed was executed on March 11, 1993.

4

Subdivision plat was never marked and approved, according to my knowledge. However, if this has been done, this deed could now be recorded." (Pl. Mem., Ex. 20-G). In a letter from Moore to Simpson dated September 20, 1999, Moore acknowledged that Simpson had given her the deed to Tract 1, which she recorded on November 18, 1998. (Pl. Response to Simpson Mot. for Sum. Jud., Ex. 20-K).

**C. Tract 3**

The title to Tract 3 vested in R. Whisenant and L. Whisenant in 1992 with the deed from Ms. Curtis. It appears that the title remains with the Whisenants. In 1999, Moore appears to have begun to focus her efforts on reacquiring Tract 3 as per the agreement with the Whisenants.

1. In a letter to Simpson dated August 27, 1999, Moore stated that she had received a county tax bill for Tract 1 (which had been conveyed to her by the Whisenants and the deed recorded in 1998) and inquired why she had not received a tax bill for Tract 3. (Pl. Response to Simpson Mot. for Sum. Jud., Ex. 20-H).

2. In September of 1999, Moore met with R. Whisenant who indicated that he wished to purchase Tract 3. Apparently, Moore consulted with Columbia attorney Dennis Bolt ("Bolt") over "the problem...concerning David Simpson." A letter from Moore to Bolt dated September 13, 1999, indicates that Bolt was engaged to obtain "the paperwork" from Simpson. (Pl. Response to Simpson Mot. for Sum. Jud., Ex. 20-I).

3. Despite the fact that Moore had consulted with Bolt, she wrote Simpson on September 20, 1999 asking him to contact her about obtaining title to Tract 3 from the Whisenants. (Pl. Response to Simpson Mot. for Sum. Jud., Ex. 20-K).

4. On November 8, 1999, Simpson wrote Moore concerning her desire to obtain Tract

3 from the Whisenants:

> I realize that you have ask[ed] several times for a document concerning the purchase of the third tract of the property purchased by Ron & Lisa Whisonant. I have responded to that request on several occasions either by phone or by mail. The response earlier and still is that the road to that parcel has not been approved by the County. Until the road is approved by the County there's no way to divide the tract from the other property owned by Ron & Lisa. Once there is a road that has been approved by the County then the property can be subdivided and that parcel would be deeded to you. However, again, until that occurs there can be no deed. I am sending you a copy of what I have which is something that you also already have, which is the option to purchase that particular tract.

(Pl. Response to Simpson Mot. for Sum. Jud., Ex. 37-B).

5. On November 16, 1999, Moore faxed Bolt a copy of Simpson's letter and stated that it appeared Simpson did not have "the paperwork" on Tract 3. (Pl. Response to Simpson Mot. for Sum. Jud., Ex. 20-M).

6. On that same date, November 16, 1999, Moore wrote Simpson referencing his letter of November 8, and stated that she needed "the original paperwork [deed] that you did on..." Tract 3. In this letter, Moore indicated for the first time that she intended to combine Tract 3 with property owned by her aunt to sell for development of multi-family housing. (Pl. Response to Simpson Mot. for Sum. Jud., Ex. 44). By letter of December 22, 1999, Moore again requested the deed for Tract 3 from Simpson. (Pl. Response to Simpson Mot. for Sum. Jud., Ex. 44).

7. On January 11, 2000, Simpson wrote the Whisenant's attorney stating:

> As you may know from your dealings with the Whisonants [sic], they agreed to deed back to Charlotte Ann Smith and Mary Joe Moore the piece of property at the back of their property once that was possible under the county subdivision regulations. Moore and Smith are now ready for that property to be deeded to them. If you have not already

6

> gotten the right of way question solved, this would be the opportune time to take care of all those matters. Please contact me and let me know whether you still represent the Whisonants [sic] or whether you would prefer that I contact them direct regarding this matter. I do not represent Moore or Smith, but I would be glad to help facilitate the document exchange if you think that would be helpful.
>
> (Pl. Response to Simpson Mot. for Sum. Jud., Ex. 45).

8. On July 13, 2000, Bolt wrote Simpson, referenced Simpson's letter of January 13, 2000 to the Whisenants' attorney, and stated:

> This is to call upon you one last time to please get this matter taken care of, or the only choice I will have as the family lawyer is to recommend some type of lawsuit against Mr. Whisenant to compel him to live up to the terms and conditions of the agreement.
>
> (Pl. Response to Simpson Mot. for Sum. Jud., Ex. 46).

9. In the Fall of 2000, it appears that Moore and her aunt, Anne G. Vickery, began to move forward with their plan to combine their property for multi-family development. A plat dated October 23, 2000 showed the combined property which included Tracts 1 and 3 from the previous transaction. Tract 3, of course was still titled to R. Whisenant and L. Whisenant.

10. In connection with this development plan by Moore and Ms. Vickery, it appears Moore hired another York County attorney, Bruce M. Poore ("Poore") to gain county approval and obtain Tract 3 from the Whisenants. On January 4, 2001, Poore wrote Moore stating that he had received revised plats for the Moore/Vickery property and that they were ready to move forward with the process to gain county approval. (Pl. Response to Simpson Mot. for Sum. Jud., Ex. 27).

11. On June 7, 2001, Poore wrote R. Whisenant and L. Whisenant enclosing a copy of

7

|     | |
| --- | --- |
|     | the plat which had been approved by York County and a deed for Tract 3 for the Whisenants to sign conveying Tract 3 to Moore "to complete your agreement with Ms. Moore which dates back to 1992." (Pl. Response to Simpson Mot. for Sum. Jud., Exs. 29-A and 28). |
| 12. | R. Whisenant and L. Whisenant did not respond to Poore's letter. Poore wrote a follow-up letter to the Whisenants on July 10, 2001. (Pl. Response to Simpson Mot. for Sum. Jud., Ex. 29-C). |
| 13. | Apparently, in the latter part of 2001, Moore hired Walters to form a corporation to act as a holding company for the property to be developed by her and Ms. Vickery. The record shows that the corporation AVMM, LCC was registered with the Secretary of State on or about December 21, 2001. (Pl. Mem., Ex. 2). |
| 14. | R. Whisenant and L. Whisenant signed the deed provided by Poore conveying Tract 3 to Moore on December 28, 2001. (Pl. Response to Walters Motion for Summary Judgment, Ex. 23).[3] According to R. Whisenant and L. Whisenant, they returned the original deed to Tract 3 to Poore's office.[4] (Pl. Response to Simpson Mot. for Sum. Jud., Ex. 7).[5] |
| 15. | Moore received a copy of the deed (Walters Response, Ex. 23), gave it to Walters, and charged him with obtaining the original from Simpson (who apparently did not have the original deed) and to have it recorded. (Walters Response, Ex. 3). Walters |

---

[3]Hereinafter referred to as ("Walters Response, Ex. __").

[4]Poore does not recall receiving the original executed deed. (Walters Response, Ex. 21-C).

[5]*See also* L. Whisenant deposition attached to Simpson's motion for summary judgment.

8

talked with Simpson, but Simpson was unaware that the Whisenants had executed the deed to Tract 3. (Walters Response, Ex. 7).

### D. Whisenant Foreclosure

Wells Fargo Bank, N.A. filed a foreclosure action against R. Whisenant and L. Whisenant for the Tract 2 property on December 28, 2006. No other party to this action, including Moore, was named as a Defendant. (Kimball Mem., Ex. H). Judgment in the foreclosure action was entered on February 15, 2007. (Kimball, Mem., Ex. I). A court deed to Tract 2 to the successful bidder at the foreclosure sale (Robert Clement Norton, et al.,) was recorded on April 4, 2007. (Kimball Mem., Ex. K).

## DISCUSSION

### A. Standard of Review

With the exception of R. Whisenant and L. Whisenant, all parties have moved for summary judgment. Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A fact is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Id*. In deciding a summary judgment motion, the Court must view the record as a whole and in the light most favorable to the nonmovant. Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir.1985).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of

material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the nonmovant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." Anderson, 477 U.S. at 251–52.

When the parties file cross-motions for summary judgment, "the standards upon which the court evaluates the motions for summary judgment do not change." Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir.1991). "[T]he Court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" Rossignol v.. Voorhaar, 316 F.3d 516, 523 (4th Cir.2003) (quoting Philip Morris Inc. v. Harshbarger, 122 F.3d 58, 62 n. 4 (1st Cir.1977)). The fact that both sides have moved for summary judgment does not establish that no genuine dispute of material fact exists, and require that judgment be granted to one side or the other. *See* Worldwide Rights Ltd. P'ship v. Combe Inc., 955 F.2d 242, 244 (4th Cir.1992); Am. Fid. & Cas. Co. v. London & Edinburgh Ins. Co., 354 F.2d 214, 216 (4th Cir.1965).

### B. Moore's Motion for Summary Judgment

The amended complaint does not allege specific claims against specific Defendants. Instead the amended complaint lists a number of "reasons" the Defendants are being sued, followed by a recitation of factual allegations. The "reasons" listed by Moore are:

    a. Conspiracy to Defraud

    b. Fraud

    c. Unfair Trade Practices

    d. Breach of Contract

    e. Intentional Misrepresentation

      f.  Unjust Enrichment

      g.  Immoral and Unethical Practices

      h.  Bad Faith - Dishonest Dealings

      i.  Attorneys did not protect client

      j.  Obstruction of Justice

      k.  Serious Miscarriage of Justice

Some of these "reasons" stated by Moore clearly do not constitute civil causes of action under South Carolina law. Others are overlapping and/or misstated. In her motion for summary judgment, Moore asserts that she has been damaged due to "(t)he failure of the Defendants to complete their respective obligations." (Pl.Mot., p. 2). Moore then argues that Judge Kimball, Simpson, and Walters were negligent in performing their duties. She also discusses the involvement of R. Whisenant and L. Whisenant and their "intimate knowledge of the transactions," but does not assert any claim against them.

As discussed below, the undersigned concludes that Defendants are entitled to summary judgment for various reasons. It is, therefore, recommended that Moore's motion for summary judgment be <u>denied</u>.

### C.  **Judge Kimball**

Judge Kimball argues that he is entitled to summary judgment based on the doctrine of absolute immunity and that insofar as Moore's claims related to his actions as an attorney before he became Master-in-Equity, those claims are barred by the statute of limitations. In her response to Judge Kimball's motion, Moore filed a motion to dismiss Judge Kimball. It is therefore, recommended that Judge Kimball's motion for summary judgment (Doc. No. 52), and Moore's

11

motion to dismiss Judge Kimball (Doc.No. 75) be <u>granted</u> and that all claims against Judge Kimball be <u>dismissed</u> with prejudice.

### D.  <u>Statute of Limitations - Simpson and Walters</u>

In <u>Kelly v. Logan, Jolley, & Smith, L.L.P.</u>, 383 S.C. 626, 682 S.E.2d 1, 4 (Ct.App. 2009), which held that the statute of limitations to bring a legal malpractice action in South Carolina is three years pursuant to S.C.Code Ann. § 15-3-530(5), the Court of Appeals discussed the rationale for statutes of limitations:

> Statutes of limitations are not simply technicalities. <u>Moates v. Bobb</u>, 322 S.C. 172, 176, 470 S.E.2d 402, 404 (Ct.App.1996). On the contrary, they have long been respected as fundamental to a well-ordered judicial system. <u>Hooper v. Ebenezer Senior Serv. & Rehab., Ctr.</u>, 377 S.C. 217, 227, 659 S.E.2d 213, 218 (Ct.App.2008). Statutes of limitations embody important public policy concerns as they stimulate activity, punish negligence, and promote repose by giving security and stability to human affairs. <u>Moates</u>, 322 S.C. at 172, 470 S.E.2d at 404. One purpose of a statute of limitations is "to relieve the courts of the burden of trying stale claims when a plaintiff has slept on his [or her] rights." <u>McKinney v. CSX Transp., Inc.</u>, 298 S.C. 47, 49–50, 378 S.E.2d 69, 70 (Ct.App.1989) (internal quotations and citations omitted). Another purpose of a statute of limitations is to protect potential defendants from protracted fear of litigation. <u>Pelzer v. State</u>, 378 S.C. 516, 520, 662 S.E.2d 618, 620 (Ct.App.2008) (internal citation omitted). "Statutes of limitations are, indeed, fundamental to our judicial system." <u>Hooper</u>, 377 S.C. at 228, 659 S.E.2d at 219 (internal citation omitted).

The three year statute of limitations begins to run, "not merely by knowledge of an injury but by knowledge of diligently acquired facts sufficient to put an injured person on the notice of the existence of a cause of action against another." *Id.,* citing <u>Epstein v. Brown</u>, 363 S.C. 372, 376, 610 S.E.2d 816, 818 (2005).  Moore filed her complaint in this Court on September 1, 2009. Therefore, if she had knowledge of the injuries she now alleges prior to September 1, 2006, her claims are barred by the statute of limitations.

Insofar as Moore alleges claims against Simpson for his handling of the transactions relating

to Tract 1, those claims are clearly barred. The deed from R. Whisenant and L. Whisenant to Moore for Tract 1 was recorded on November 1, 1998. Moore acknowledges that she received the deed from Simpson and recorded it herself on that date. The record conclusively shows that Moore would have had knowledge of any alleged injury stemming from the delay in recording the deed to Tract 1 almost eleven years prior to the filing of the present case.

Moore also appears to allege that Simpson and Walters were negligent with respect to obtaining and recording the deed for Tract 3 from R. Whisenant and L. Whisenant to her. The record shows that Moore became aware that the title to Tract 3 remained in the Whisenants' name in 1999. In August of 1999 Moore inquired of Simpson why she had not received a tax notice for Tract 3. By September of 1999, Moore had engaged Bolt to obtain the deed from Tract 3 she believed Simpson had in his possession. In 2001, Moore hired Poore to obtain the replacement deed for Tract 3 from R. Whisenant and L. Whisenant. The deed was signed on December 28, 2001 and the record shows that it was returned to Poore's office. Moore asserts that she hired Walters to obtain the deed from Simpson in 2001. Thus, the undersigned concludes that Moore had knowledge of any claims of negligence against Simpson and Walters well before September of 2006.

### E. Negligence /Tract 3/ Simpson and Walters

Moore at this point appears to concede that the claims she alleges against Simpson and Walters are for negligence or legal malpractice.

> In order to prevail in a cause of action for legal malpractice, the plaintiff must prove: (1) the existence of an attorney-client relationship; (2) the breach of a duty by the attorney; (3) damage to the client; and (4) proximate cause of the client's damages by the breach. In South Carolina, attorneys are required to render services with the degree of skill, care, knowledge, and judgment usually possessed and exercised by members of the profession, and the standard to be applied in determining legal malpractice issues is statewide. Finally, generally a plaintiff must establish this standard of care by expert testimony.

13

> Harris Teeter, Inc. v. Moore & Van Allen, PLLC, 390 S.C. 275, 701 S.E. 2d 742, 745 (2010) (internal quotations and citations omitted).

Even if Moore's claims for legal malpractice against Simpson and Walters were not barred by the statute of limitations, these Defendants would be entitled to summary judgment for several reasons.

Assuming the existence of an attorney-client relationship, Moore has not established a standard of care by expert testimony or otherwise. She simply alleges that Simpson should have obtained the deed to Tract 3 from the Whisenants and had it recorded. Her complaint against Walters is that he failed to get the deed from Simpson and have it recorded.

Moore's belief that R. Whisenant and L. Whisenant signed returned deeds to her for Tracts 1 and 3 at the time of the closing in 1992 is unsupported by the record. If deeds had been prepared and signed at that time, there would have been no need to prepare and execute the options to purchase for Tracts 1 and 3. Further, the legal description used to convey Tracts 1, 2 and 3 from Ms. Curtis to R. Whisenant and L. Whisenant was drawn from the August 22, 1992 plat. The transaction was premised on the fact that the plat was insufficient to prepare and record deeds for Tracts 1, 2, and 3 individually because the plat did not show the required roads for ingress and egress. Moore concedes this fact. In any event, the deed could not have been recorded until the appropriate plat had been approved by the County and filed with the Clerk of Court. Moore has not shown when the plat was approved or recorded.

This conclusion is supported by the fact that the deed from R. Whisenant and L. Whisenant to Moore for Tract 3 was not prepared until 2001 when Mr. Poore was retained to handle the transactions relating to the proposed multi-family project of Moore and Ms. Vickery. The record shows that a new plat was prepared which showed Tract 3 being combined with property of Ms.

Vickery which met county specifications. Once that plat was filed, Mr. Poore prepared a deed and sent it to R. Whisenant and L. Whisenant. After some delay, it was executed and returned to Mr. Poore. The undersigned finds that there is no evidence to support a conclusion that there was a deed from the Whisenants to Moore for Tract 3 prior to 2001, nor is there any evidence that Simpson or Walters ever had possession of the deed.

Last, the undersigned concludes that there was no breach of duty by Walters. Moore specifically alleges that it was Walters' obligation to obtain the deed for Tract 3 from Simpson. The record shows that Walters contacted Simpson about the deed. However, as discussed above, there is no evidence that Simpson possessed the deed. To the contrary, the evidence shows that the Whisenants returned the deed to Poore as they were instructed.

### F. R. Whisenant and L. Whisenant

Moore appears to assert that R. Whisenant and L. Whisenant breached the contract to convey Tracts 1 and 3 to her once the appropriate plats were recorded. Assuming the enforceability of the options to purchase given by R. Whisenant and L. Whisenant to Moore in 1992, Moore has failed to show a breach of contract. The record shows that each time the Whisenants were presented with a deed to fulfill the contract, they executed the deed (albeit with some delay) and returned the deed as instructed. Even thought the events surrounding the preparation, execution, and return of the deeds are somewhat clouded, the record shows that the Whisenants ultimately lived up to their obligations. Further, in their answers filed in the present case, they have expressed their continued willingness to convey Tract 3 to Moore. It is, therefore, recommended that the claims against R. Whisenant and L. Whisenant be dismissed *sua sponte*.

**CONCLUSION**

After reviewing the record, it is recommended that:

1. Plaintiff's motion for summary judgment (Doc. No. 55) be **denied**;

2. Judge Kimball's motion for summary judgment (Doc. No. 52) be **granted**;

3. Plaintiff's motion to dismiss Judge Kimball (Doc. No. 75) be **granted,** with prejudice;

4. Simpson's motion for summary judgment (Doc. No. 59) be **granted**;

5. Walters' motion for summary judgment (Doc. No. 62) be **granted**; and

6. All claims against R. WHisenant and L. Whisenant be **dismissed**, *sua sponte*.

Joseph R. McCrorey
United States Magistrate Judge

Columbia, South Carolina

July 26, 2011

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).